**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| FLETCHER'S ORIGINAL STATE FAIR CORNY DOGS, LLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 4:19-cv-00681-SDJ |
| FLETCHER-WARNER HOLDINGS LLC, VICTORIA JACE FLETCHER CHRISTENSEN, VICTORIA WARNER FLETCHER, and FLETCH TECHNOLOGY, LLC, | § § § § § § | **NONCONFIDENTIAL VERSION** |
| *Defendants*. | § § | |

**PLAINTIFF'S MOTION TO HOLD DEFENDANTS**
**IN CONTEMPT FOR VIOLATING PERMANENT INJUNCTION**

Steven E. Ross
Lead Attorney
Texas Bar No. 17305500
**ROSS IP GROUP PLLC**
5050 Quorum Drive, Suite 700
Dallas, Texas 75254
Phone: 972-661-9400
Facsimile: 972-661-9401
Email: sross@rossipg.com

Christopher M. McDowell
Texas Bar No. 24002571
**McDOWELL LAW PLLC**
1000 Texan Trail, Suite 225
Grapevine, Texas 76051
Phone: 817-678-8170
Facsimile: 469-373-2245
Email: cmcdowell@mcdowelllawfirm.net

**Attorneys for Plaintiff**

*NONCONFIDENTIAL VERSION*

Plaintiff Fletcher's Original State Fair Corny Dogs, LLC ("Fletcher's") asks the Court to hold defendants Fletcher-Warner Holdings LLC; Fletch Technology, LLC; Victoria Jace Fletcher Christensen; and Vickie Warner Fletcher (hereinafter referred to collectively as the "FWH Parties" or the "Defendants") in contempt of court.

After agreeing to a permanent injunction that prohibits them from using Plaintiff Fletcher's trademarks and service marks, and any confusingly similar variations of those marks, the FWH Parties have brazenly made, and continue to make, widespread use of the "Fletcher" mark to promote their corn dog business. They have also violated the permanent injunction in other respects, including use of advertising that is likely to cause confusion by linking them to the State Fair of Texas, where Plaintiff Fletcher is famous for selling its beloved corn dogs, but where the FWH Parties' business has never been a vendor. These violations are causing actual confusion in the marketplace and are doing irreparable harm to Plaintiff Fletcher's valuable goodwill and trademark rights.[1]

## 1.0 BACKGROUND

### 1.1     The Underlying Action and Permanent Injunction

Plaintiff Fletcher's is the owner of numerous trademarks and service marks featuring the word "Fletcher's" that have long been famous throughout Texas and the United States as indicating the source of Plaintiff's corn dogs, restaurant services, and snack bar services. In February 2019, the FWH Parties opened a competing corn dog business named "Fletch." Plaintiff Fletcher's filed suit against the FWH Parties on September 19, 2019, alleging that the FWH Parties' use of "Fletch"

---

[1] The present motion is supported by (i) the Declaration of Amber Fletcher, attached as Exhibit A; (ii) the Declaration of Steven E. Ross, attached as Exhibit B (including Exhibits B1-B32); and (iii) the Expert Report and Declaration of Tony Wright, attached as Exhibit C (including Addenda A-F).

in their corn dog business infringed Plaintiff Fletcher's famous trademarks and service marks. On January 17, 2020, this Court entered a preliminary injunction, prohibiting the FWH Parties from using the marks "Fletcher's," "Fletch," "Eat Fletch," and "EatFletch," and all confusingly similar variations of the foregoing in any form of interstate commerce related to the food and beverage industry. [2]

███████████████ Plaintiff Fletcher's ██████ ██████████████████ with the FWH Parties. In accordance with ██████████, the parties submitted an Agreed Permanent Injunction and Final Judgment (Dkt. #140) (the "Agreed Permanent Injunction"), which this Court entered on December 23, 2020.[3] The Agreed Permanent Injunction prohibits the FWH Parties and those in active concert with any of them from:

    a. Using the Fletcher's Marks and any confusingly similar variation of any of the Fletcher's Marks (including but not limited to "Fletcher," "Fletch," or "Eat Fletch"), either by themselves or with any other words or designs, in any form of interstate commerce related to the food and beverage industry;

    b. Including the Fletcher's Marks, and any confusingly similar variation of any of the Fletcher's Marks (including but not limited to "Fletcher," "Fletch," or "Eat Fletch"), either by themselves or with any other words, for purposes of search engine optimization or in the hypertext markup language corresponding to any Internet website that Advertises[4] products or services in the food and beverage industry;

    c. Using any form of Advertising that any FWH Party is or has ever been affiliated or associated with Fletcher's business;

---

[2] *Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*, 434 F. Supp. 3d 473, 499 (E.D. Tex. 2020) (the "Preliminary Injunction"). Following entry of the Preliminary Injunction, the FWH Parties adopted the assumed name of "Corn Dog With No Name."

[3] A copy of the Agreed Permanent Injunction is attached hereto as Exhibit B1.

[4] The Agreed Permanent Injunction defines "Advertising" (and its correlative term "Advertise") as "any communication that promotes products or services to the public, whether it be oral or written or via print, radio, television, email, websites, flyers, signs, Facebook, LinkedIn, Instagram, Twitter, or any other social media." Ex. B1, Permanent Inj. at ¶ 11, n.1.

*NONCONFIDENTIAL VERSION*

    d.   Using any form of Advertising that is likely to cause confusion as to whether Fletcher's is the source of any of the FWH Parties' products or services;

    e.   Using any form of Advertising that is likely to cause confusion as to whether any of the FWH Parties' products or services are sponsored by, approved by, endorsed by, or otherwise connected with Fletcher's; and

    f.   Using any form of Advertising that:

        i.   Includes the name, photographs of, or stories about Neil Fletcher Sr., Carl Fletcher, Neil ("Skip") Fletcher Jr., or any other member of the Fletcher family by name without their written consent or the written consent of any applicable estate;

        ii.   Includes the story of the creation of corny dogs; or

        iii.   Includes a photograph of any concession stand or other place of business operated by Fletcher's Unlimited, Fletcher's, or any of their predecessors.[5]

## 1.2    The FWH Parties' Violations of the Agreed Permanent Injunction

### 1.2.1   Continued Use of the Marks "Fletcher" and "Fletch"

In blatant disregard for the clear terms of the Agreed Permanent Injunction, the FWH Parties have engaged, and continued to engage, in widespread use of the mark "Fletcher," and to a lesser extent, the mark "Fletch," to identify and promote their corn dog business.

<u>Business Names</u>. Fifteen months after entry of the Agreed Permanent Injunction, the FWH Parties have yet to change the names of their two companies, **Fletcher**-Warner Holdings LLC[6]

---

[5] Exhibit B1 at ¶ 11.

[6] Exhibit B14. The FWH Parties' use of this trade name has caused at least on local event to list them as selling corn dogs under the name "Fletcher Warner Holdings LLC" in promotional materials. Exhibit B12 at p. 3.

and **Fletch** Technology LLC.[7] This use of "Fletcher" and "Fletch" violates at least Paragraphs 11(a), 11(d), and 11(e) of the Permanent Injunction.[8]

HTML Code. The hypertext markup language ("html") code for the FWH Parties' website at www.corndogwithnoname.com still incudes multiple occurrences of "Fletcher."[9] This violates at least Paragraph 11(b) of the Permanent Injunction.

Internet and Social Media Advertising. The FWH Parties continue to make widespread use of the mark "Fletcher" to promote their business on the Internet and on multiple social media platforms.[10] For example, their website prominently displays the "Fletcher" mark multiple times.[11] Their Instagram profile also displays the "Fletcher" mark: [12]



---

[7] Exhibit B15.
[8] The FWH Parties represented over a year ago that Fletch Technology would be winding down as soon as possible, Exhibit B30 at p. 4, but there is no evidence that has occurred.
[9] Exhibit B3.
[10] Exhibit B2 at pp. 3-5; Exhibit B4-B7.
[11] Exhibit B2 at pp. 3-5. Compare Exhibit B2 to the FWH Parties' website as it existed before the ███████████████████. Exhibit B24 (www.corndogwithnoname.com website listing "Vic and Jace F." on September 28, 2020).
[12] Exhibit B4 at p. 2.

4

The FWH Parties' use of the "Fletcher" mark is clearly <u>not</u> inadvertent. Instead, they have gone to great lengths to use the "Fletcher" mark at every opportunity to take a free ride on Plaintiff Fletcher's valuable goodwill in the promotion of their competing corn dog business. They use the "Fletcher" mark on their Facebook profile,[13] on their LinkedIn profile,[14] on their Google Business profile,[15] and on their Yelp profile.[16] They use "Fletcher" on their Twitter profile.[17] In addition, they often sign social media posts with "Vic & Jace Fletcher."[18]

Defendant Jace Christensen also promotes the FWH Parties' business on her personal Facebook page under the name of "Victoria Jace Fletcher."[19] It should be noted that Defendant Christensen went by "Jace Christensen" before she established her corn dog business,[20] and even today, she uses the name "Jace Fletcher Christensen" in contexts other than her corn dog business.[21]

<u>Signage</u>. The FWH Parties also use various signage that includes the phrase "Vic and Jace Fletcher." They have added the phrase to the signage on their catering van.[22] They prominently display "Vic & Jace Fletcher" on signage that promotes their business at public events.[23] They also display "by Vic & Jace Fletcher" on signage at the front of their restaurant.[24]

---

[13] Exhibit B4 at p. 3.
[14] Exhibit B4 at p. 4
[15] Exhibit B5.
[16] Exhibit B6.
[17] Exhibit B4 at p. 5.
[18] Exhibit B7; Exhibit C, T. Wright Decl., Addendum D at pp. 9-11.
[19] Exhibit B8.
[20] Exhibit B25 (June 6, 2017, screenshot of the Thornbury Capital Advisors website, listing "Jace Christensen" as founder).
[21] Exhibit B13 (January 18, 2022, screenshot of the Thornbury Capital Advisors website, listing "Jace Fletcher Christensen" as founder).
[22] Exhibit B10.
[23] Exhibit B11.
[24] Exhibit B9.

The FWH Parties' use of the "Fletcher" mark violates Paragraphs 11(a), 11(b), 11(d), and 11(e) of the Agreed Permanent Injunction. Plaintiff Fletcher's has written to the FWH Parties twice to demand compliance with the injunction, but the FWH Parties have refused to rename their business and refused to cease using the "Fletcher" mark in their advertising.[25]

### 1.2.2   Advertisements that Link the FWH Parties to the State Fair of Texas

Plaintiff Fletcher's iconic brand and its beloved corn dogs have long been associated with the State Fair of Texas.[26] In its January 17, 2020, Preliminary Injunction ruling, this Court observed that Fletcher's corny dogs are "a long-standing tradition at the State Fair of Texas."[27] The Court further found that Plaintiff Fletcher's has a history with the State Fair of Texas dating back to 1942.[28] Plaintiff Fletcher's even has "State Fair" in its trade name.

Recognizing the strong and long-standing association between "Fletcher's" brand corn dogs and the State Fair of Texas in the minds of consumers, and seeking to unfairly capitalize on Plaintiff Fletcher's goodwill, the FWH Parties often include references to the State Fair of Texas in their advertising. This is particularly misleading since the FWH Parties' business has never been a vendor at the State Fair of Texas.[29]

For example, the FWH Parties' social media posts regularly include hashtags such as "#statefairoftexas," "#statefairoftx," "#statefair," and "#texasstatefair."[30] As Plaintiff Fletcher's online marketing expert, Mr. Tony Wright, explains, hashtags are important online marketing tools

---

[25] Exhibits B29-32.

[26] Exhibit A, A. Fletcher Decl. at ¶ 18.

[27] *Fletcher's Original*, 434 F. Supp. 3d at 479.

[28] *Fletcher's Original*, 434 F. Supp. 3d at 479-80 and 485. In the Agreed Permanent Injunction, the parties agreed that the findings of fact and conclusions of law set out in the Preliminary Injunction ruling were "hereby adopted as final findings of fact and conclusions of law." Exhibit B1, Agreed Permanent Inj. at ¶ 4.

[29] Exhibit A, A. Fletcher Decl. at ¶ 17.

[30] Exhibit B16; Exhibit B17; Exhibit C, T. Wright Decl. at Addenda E and F.

that "serve to associate a particular post with a specific topic."[31] When a user clicks on a hashtag, "they are presented with a list of all posts that mention that particular hashtag."[32] "Social media marketers work to understand which hashtags are trending, and then utilize those hashtags in an attempt to associate their brand with the ongoing conversation around a particular topic."[33]

The following is a screenshot that shows the hashtags in an Instagram post the FWH Parties made on September 12, 2021, just before the opening of the 2021 State Fair of Texas:[34]

#frydeeply #corndogwithnoname #cornychronicles #corndog
#funnelcake #statefair #statefairoftexas #statefairoftx #fairpark
#familybusiness #legacy #dallas #fortworth #dfw #austin #atx
#houston #htx #texasmonthly #visitDallas #visittexas #texastodo
#texas #tx #texans #dfwrestaurant #dfwfoodie #dallasfoodtrucks
#dallascatering #food

The post includes "#statefair," "#statefairoftexas," "statefairoftx," "fairpark," "#familybusiness," and "#legacy." The post demonstrates that the FWH Parties are trying to link their business to the State Fair of Texas, where Plaintiff Fletcher's is known for selling its famous Fletcher's brand corn dogs. Plaintiff's expert found that the FWH Parties have used State Fair related hashtags on their Facebook page at least 26 times, and that they have used State Fair related hashtags on Instagram at least 34 times.[35] The FWH Parties' use of hashtags and other marketing devices to link their business to the State Fair of Texas, particularly when their business has never been a vendor at the State Fair of Texas, is misleading to consumers and violates at least Paragraphs 11(d) and 11(e) of the Agreed Permanent Injunction because such use is likely to cause confusion as to

---

[31] Exhibit C, T. Wright Decl. at ¶ 15.
[32] *Id.*
[33] *Id.*
[34] Exhibit B17 at p. 6.
[35] Exhibit C, T. Wright Decl. at ¶ 16. All of these posts occurred on or after January 1, 2021, *id.* at ¶ 4, so they were after the December 23, 2020, entry of the Agreed Permanent Injunction.

*NONCONFIDENTIAL VERSION*

(i) whether Plaintiff Fletcher's is the source of the FWH Parties' products or services, and (ii) whether the FWH Parties' products and services are somehow connected to Plaintiff Fletcher's.

**1.3     The FWH Parties' Violations are Causing Actual Confusion**

The FWH Parties' actions are having their intended effect.[36] There have been numerous instances since January 1, 2021, in which consumers and other members of the public have been actually confused as to whether Plaintiff Fletcher's is the source of any of the FWH Parties' products or services or whether the FWH Parties are affiliated or otherwise connected with Plaintiff Fletcher's.

Many of these instances of actual confusion are detailed in the accompanying declaration of Ms. Amber Fletcher, who is Head of Marketing and Events for plaintiff.[37] They span from April 25, 2021, to as recently as March 18, 2022. In one instance, a fan of the University of Texas football team made a post on an online forum on September 1, 2021, that stated: "A 'Corn Dog With No Name' is Fletcher's corny dogs. Google it. Change the thread title to 'glad we still have Fletcher's corny dogs!'"[38] On September 4, 2021, another fan made the following post on the same forum:[39]

---

[36] As explained bellow, Plaintiff Fletcher's need not prove actual confusion among consumers or others to prevail on the present motion; but the nature and extent of the confusion demonstrates the harm being done to the public and to Plaintiff Fletcher's rights by the FWH Parties' violations of the Agreed Permanent Injunction.

[37] Exhibit A, A. Fletcher Decl. at ¶¶ 3-45. Additional instances of actual confusion are demonstrated by Exhibits B18-B23 and B26.

[38] Exhibit A, A. Fletcher Decl. at ¶ 31; *see also* Exhibit B20.

[39] *Id.*

*NONCONFIDENTIAL VERSION*



These fans were obviously confused about whether Plaintiff Fletcher's and the FWH Parties

businesses were either one and the same or at least affiliated or connected with each other.

In addition, on March 18, 2022, Plaintiff Fletcher's received an email from Levy

Restaurants, one of the nation's leading concessions companies.[40] The email asked Plaintiff

Fletcher's to provide a certificate of insurance for a venue or event called "COTA." Plaintiff

Fletcher's did not know what Levy meant by "COTA," and after a few additional email exchanges,

it became apparent that Levy was confused and had sent Plaintiff Fletcher's an email that was

actually intended for the FWH Parties.[41]

## 2.0 ARGUMENT AND AUTHORITIES

### 2.1 Legal Standards

"Courts possess the inherent authority to enforce their own injunctive decrees."[42] A court

may enforce its orders through civil contempt, which is intended to compel obedience to a court

order and compensate for the violation.[43] "A party commits contempt when he violates a definite

---

[40] Exhibit A, A. Fletcher Decl. at ¶ 42.

[41] *Id*. at ¶¶ 43-45.

[42] *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (citing *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985), *cert. denied*, 474 U.S. 1056 (1986)).

[43] *See In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009) ("If the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. If

and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order."[44] "[A] movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence 1) that a court order was in effect; 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order."[45] Contempt proceedings do not open for reconsideration the factual and legal bases of the original controversy.[46] Further, "a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable."[47] Finally, in assessing the FWH Parties' conduct, the Court should apply the "safe distance" rule:

> In a case such as this, where [parties] have been found guilty of infringing the trademark rights of others, they should thereafter be required to keep a safe distance from the dividing line between violation of, and compliance with, the injunction. They must do more than see how close they can come with safety to that which they are enjoined from doing.[48]

---

the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil.").

[44] *SEC v. First Fin. Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981).

[45] *Whitecraft v. Brown*, 570 F.3d 268, 271-72 (5th Cir. 2009) (quoting *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)). "Clear and convincing evidence is that weight of proof which produces in the mind of the trier of fact a firm belief or conviction … so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Hornbeck Offshore Servs. L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013) (quoting *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004)).

[46] *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948) (Recognizing the "long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy.").

[47] *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019); *see also McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191 (1949) ("The absence of willfulness does not relieve from civil contempt."); *Neal Techs., Inc. v. Unique Motorsports*, Inc., 2018 WL 3630128, at *2 (E.D. Tex. July 31, 2018) ("Good faith is not a defense to civil contempt; the question is whether the alleged contemnor complied with the court's order.").

[48] *Eskay Drugs, Inc. v. Smith, Kline & French Laboratories*, 188 F.2d 430, 432 (5th Cir. 1951) (affirming finding of contempt); *see also* 5 McCarthy on Trademarks and Unfair Competition § 30:21 (5th ed. 2022) (discussing "safe distance" rule).

*NONCONFIDENTIAL VERSION*

**2.2    The Agreed Permanent Injunction Prohibits Use of the "Fletcher" and "Fletch" Marks and also Prohibits Advertising that is Likely to Cause Confusion**

The Agreed Permanent Injunction was entered on December 23, 2020, and remains in effect.[49] The injunction expressly prohibits the FWH Parties from using "any confusingly similar variation of any of the Fletcher's Marks (including but not limited to 'Fletcher,' 'Fletch,' or 'Eat Fletch): (i) in any form of interstate commerce relating to the food and beverage industry,[50] or (ii) in the hypertext markup language corresponding to any Internet website that Advertises products or services in the food and beverage industry.[51] The injunction additionally prohibits the FWH Parties from using any form of Advertising that is likely to cause confusion as to whether (i) Plaintiff Fletcher's is the source of any of the FWH Parties' products or services,[52] or (ii) the FWH Parties' products are "sponsored by, approved by, endorsed by, or otherwise connected with" Plaintiff Fletcher's.[53]

**2.3    The FWH Parties are Violating the Agreed Permanent Injunction**

The FWH Parties are clearly violating at least Paragraphs 11(a) and 11(b) of the Agreed Permanent Injunction. They cannot reasonably dispute that their corn dog business engages in interstate commerce related to the food and beverage industry. In addition, the plain language of the injunction, to which they agreed, states that "Fletcher" and "Fletch" are confusingly similar variations of the Fletcher's Marks. Consequently, the FWH Parties' use of "Fletcher" and "Fletch" in connection with their corn dog business, including but not limited to use of those terms in the trade names of their companies, is a clear violation of Paragraph 11(a).[54] Their use of "Fletcher"

---

[49] Exhibit B1, Agreed Permanent Inj. (Dkt. #140).
[50] *Id*. at ¶ 11(a).
[51] *Id.* at ¶ 11(b).
[52] *Id*. at ¶ 11(d).
[53] *Id*. at ¶ 11(e).
[54] Exhibits B2-B11, B14, B15, B16 at pp. 5-7; and B17 at pp. 3 and 6.

in the html code for their www.corndogwithnoname.com website also specifically violates Paragraph 11(b) of the injunction.[55]

In addition, the FWH Parties are violating at least Paragraphs 11(d) and 11(e) by using Advertising[56] that links them to the State Fair of Texas,[57] where Plaintiff Fletcher's is famous for selling its corn dogs over the last eighty years.[58] The FWH Parties' business has never been a vendor at the State Fair of Texas,[59] and the only reason for them to use Advertising that links them to the fair is to mislead consumers into thinking they are either the same as, or connected in some way with, Plaintiff Fletcher's. The FWH Parties' Advertising efforts to link themselves to the State Fair are not only likely to cause confusion; they have caused, and continue to cause, actual confusion as to whether their products or services are somehow connected with Plaintiff Fletcher's.[60] That is particularly true since the FWH Parties are using the confusingly similar mark "Fletcher" in virtually all their Advertising.

Plaintiff Fletcher's has written to the FWH Parties and asked them to comply with the injunction.[61] The FWH Parties take the position that "Jace and Vickie Fletcher have the right to use their own names for self-identification."[62] But their position is unreasonable and without merit.

First, the FWH Parties are using the "Fletcher" mark to attract attention to and promote their business, and not solely for purposes of so-called self-identification. They continue to use

---

[55] Exhibit B3.

[56] As previously pointed out, the term "Advertising" is defined in the Agreed Permanent Injunction at Paragraph 11(c), note 1.

[57] Exhibits B7, B16, and B17; and Exhibit C, T. Wright Decl. at ¶¶ 14-16 and Addendum E and Addendum F.

[58] ; *Fletcher's Original*, 434 F. Supp. 3d at 479-80 and 485.

[59] Exhibit A, A. Fletcher Decl. at ¶ 17.

[60] Exhibit A, A. Fletcher Decl. at ¶¶ 19-22 and 32-37; Exhibits B18; Exhibit B19; and Exhibit B20 at p. 6.

[61] Exhibits B29-B32.

[62] *See, e.g.,* Exhibit B30 at p. 2.

"Fletcher" in their trade name, Fletcher-Warner Holdings LLC, and in virtually every form of Advertising they do to promote their business. Their use of "Fletcher" is clearly perceived by consumers and other members of the public as a trademark because that use is causing actual confusion in the marketplace.

Second, Defendant Christensen's name is "Victoria Jace Fletcher Christensen," not "Fletcher."[63] She ceased going by her maiden name when she got married, and she only resumed use of "Fletcher" when she started her corn dog business.[64] Even today she still goes by "Christensen" in contexts outside her corn dog business.[65] Her use of "Fletcher" to advertise the FWH Parties' business is obviously intended to promote confusion so she can unfairly capitalize on Plaintiff Fletcher's famous goodwill and reputation.

Third, nothing in the Agreed Permanent Injunction provides that any of the FWH Parties may use "Fletcher" for "self-identification."[66] Instead, the injunction expressly prohibits use of "Fletcher" in any form of interstate commerce related to the food and beverage industry.[67]

---

[63] *Fletcher's Original*, 434 F. Supp. 3d at 491 ("The Defendants also have chosen to use the family names 'Vic and Jace *Fletcher*' even though 'Jace Fletcher's' married name, and name as a party in this suit, is Victoria Jace Fletcher *Christensen*." (emphasis in original)).

[64] Exhibit B25 (Thornbury Capital website on June 6, 2019, listing "Jace Christensen" as a founder).

[65] Exhibit B13 (Thornbury Capital website on January 18, 2022, listing "Jace Fletcher Christensen" as a founder).

[66] The FWH Parties rely on an extremely strained interpretation of Paragraph 11(f) to justify their use of "Fletcher," *see* Exhibit B30 at pp. 2-3 and Exhibit B28 at pp. 1 and 3, but that interpretation is unreasonable because is conflicts with the plain language of other provisions of the Agreed Permanent Injunction. Exhibit B31 at pp. 3-4. The FWH Parties also rely on comments the Court made during a July 13, 2020, hearing concerning enforcement of the preliminary injunction. Exhibit B30 at p. 2. But the Court's comments were made in a different context and concern a different order. Exhibit 27 (full hearing transcript). They were also made before the entry of the Agreed Permanent Injunction on December 23, 2020.

[67] Exhibit B1 at ¶ 11(a).

Fourth, the FWH Parties do not cite any legal authority for their position, but to the extent they are attempting to assert an affirmative defense of fair use under 15 U.S.C. § 1115(b)(4), that argument is foreclosed here because it seeks to improperly reopen and relitigate the original controversy.[68] It would be particularly inappropriate to consider fair use here because the FWH Parties never pleaded an affirmative defense of fair use in the underlying action.[69] Fair use is an affirmative defense, which if not affirmatively pled is usually waived.[70]

Fifth, assuming for purposes of argument the fair use issue could still be litigated, the FWH Parties could never establish a fair use defense because they cannot meet their burden of proving (1) their use of "Fletcher" and "Fletch" was not as a trademark or service mark, (2) they used the marks "fairly and in good faith," and (3) only to describe their goods or services.[71] To the contrary, they are using "Fletcher" and "Fletch" as trademarks to attract attention and promote their business, and that use is definitely not in good faith.[72]

## 2.4    The FWH Parties Should be Held in Contempt and Sanctioned

"Upon a finding of civil contempt, the [c]ourt has broad discretion to impose judicial sanctions that would coerce compliance with its orders and compensate the moving party for any losses sustained."[73]

---

[68] *Maggio*, 333 U.S. at 69; *see also Eskay Drugs, Inc. v. Smith, Kline & French Laboratories*, 188 F.2d 430, 431 (5th Cir. 1951) ("When the appellee filed its petition for order of civil contempt, the proceedings were justifiably beyond the stage of a trial on the issue of infringement.").

[69] *See* Answer to Complaint (Dkt. #64) at pp. 8-19; Answer to First Amended Complaint (Dkt. #83) at pp. 10-12; Defs' Counterclaim, Third Party Complaint, and Amended Answer to First Amended Complaint (Dkt 85) at pp. 34-36; Defs' Counterclaim, Third Party Complaint, and Amended Answer to Second Amended Complaint (Dkt. #93) at pp. 35-37.

[70] *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 271 (5th Cir. 1999); Fed. R. Civ. P. 8(c)(1).

[71] 15 U.S.C. ¶ 1115(b)(4).

[72] *Fletcher's Original*, 434 F. Supp. 3d at 493 ("Further, Defendants have intentionally passed off their business as being affiliated with the Fletcher's mark.").

[73] *Mary Kay Inc. v. Designs by Deanna, Inc.*, 2013 WL 6246484, *4 (N.D. Tex. Dec. 3, 2013) (quoting *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574 585 (5th Cir. 2000).

*NONCONFIDENTIAL VERSION*

Accordingly, Plaintiff Fletcher's requests that the following sanctions be imposed on the FWH Parties for their violations of the Agreed Permanent Injunction:

1.      That the FWH Parties be ordered to comply with all terms of the Agreed Permanent Injunction.

2.      That Plaintiff Fletcher's recover from the FWH Parties, jointly and severally, a compensatory fine in an amount of $10,000.

3.      That the FWH Parties be required to compensate Plaintiff Fletcher's for all reasonable attorneys' fees and expenses it incurred in connection with the FWH Parties' violations of the Agreed Permanent Injunction, with the amount to be determined upon completion of these contempt proceedings.[74] The FWH Parties should be jointly and severally liable for all such attorneys' fees and expenses.

4.      That the FWH Parties be required to file with the Court an affidavit that describes in detail all steps taken to comply with the Agreed Permanent Injunction.

5.      That Plaintiff Fletcher's be granted leave to conduct limited discovery (requests for production of documents and depositions of Jace Christensen and Vickie Fletcher) to evaluate and confirm the FWH Parties' efforts to comply with the Agreed Permanent Injunction.

### 3.0 CONCLUSION AND PRAYER

For the foregoing reasons, Plaintiff Fletcher's asks that the Court grant the present motion, hold FWH Parties in contempt of court, and impose sanctions on the FWH Parties as set forth herein. A proposed order granting the requested relief accompanies the present motion.

---

[74] Exhibit B28, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*NONCONFIDENTIAL VERSION*

Dated:  April 14, 2022.                          Respectfully submitted,


                                                  /s/ *Steven E. Ross*
                                                  Steven E. Ross
                                                  Lead Attorney
                                                  Texas Bar No. 17305500
                                                  **ROSS IP GROUP PLLC**
                                                  5050 Quorum Drive, Suite 700
                                                  Dallas, Texas 75254
                                                  Phone: 972-661-9400
                                                  Facsimile: 972-661-9401
                                                  Email: sross@rossipg.com

                                                  Christopher M. McDowell
                                                  Texas Bar No. 24002571
                                                  **McDOWELL LAW PLLC**
                                                  1000 Texan Trail, Suite 225
                                                  Grapevine, Texas 76051
                                                  Phone: 817-678-8170
                                                  Facsimile: 469-373-2245
                                                  Email: cmcdowell@mcdowelllawfirm.net

                                                  **ATTORNEYS FOR PLAINTIFF**
                                                  **FLETCHER'S ORIGINAL STATE FAIR**
                                                  **CORNY DOGS, LLC**

*NONCONFIDENTIAL VERSION*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document (with attachments and exhibits) is being served on the following counsel of record for Defendants via the Court's Electronic Case Filing ("ECF") system on this 14th day of April, 2022:

>Brandon F. Renken
>Lead Attorney
>Texas Bar No. 24056197
>brenken@lockelord.com
>
>Janet E. Militello
>Texas Bar No. 14051200
>jmilitello@lockelord.com
>
>**LOCKE LORD LLP**
>600 Travis Street, Suite 2800
>Houston, Texas 77002
>713-226-1131
>713-229-2652 (fax)

The undersigned has learned that Mr. Renken recently moved his practice to the Mayer Brown firm in Houston, Texas, so a copy of the foregoing document (with attachments and exhibits) is also being emailed to Mr. Renken at his new firm at brenken@mayerbrown.com on April 14, 2022.

>/s/ *Steven E. Ross*
>Steven E. Ross

*NONCONFIDENTIAL VERSION*

## CERTIFICATE OF CONFERENCE

The undersigned lead counsel for Plaintiff hereby certifies that he conferred with Mr. Brandon Renken, lead counsel for Defendants, via letters in February and December 2021. Those letters are attached at Exhibits B29-B32 to this motion. The undersigned counsel also conferred with Mr. Renken via teleconference on April 14, 2022, regarding the present motion and the relief requested herein. Mr. Renken stated that he still represents the Defendants and that they would oppose the present motion in all respects. The parties are therefore at an impasse regarding the issues set out in the motion, and Court intervention is necessary.

/s/ *Steven E. Ross*
Steven E. Ross

## CERTIFICATE OF FILING UNDER SEAL

Pursuant to Local Rule CV-5(a)(7)(C) the undersigned lead counsel for Plaintiff hereby certifies that an unopposed motion for leave to file this document (with exhibits) was filed separately and immediately before this document was filed under seal. As required by Local Rule CV-5(a)(7)(E), Plaintiff will file a non-confidential version of this document (with exhibits) within two days of the present filing.

/s/ *Steven E. Ross*
Steven E. Ross