IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| FLETCHER'S ORIGINAL STATE FAIR CORNY DOGS, LLC, | § § § | |
| *Plaintiff/Counter-Defendant*, | § § | |
| v. | § § | CIVIL NO. 4:19-CV-00681 |
| FLETCHER-WARNER HOLDINGS, LLC, VICTORIA JACE FLETCHER CHRISTENSEN, VICTORIA WARNER FLETCHER, and FLETCH TECHNOLOGY, LLC, | § § § § § § § § | |
| *Defendants/Counter-Plaintiffs*, | § § | |
| v. | § § | |
| GLENDA GALE FLETCHER, | § § § | |
| *Third Party Defendant.* | § | |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO HOLD DEFENDANTS IN CONTEMPT**

During the August 26, 2022 hearing on Plaintiff's Motion to Hold Defendants in Contempt for Violating Permanent Injunction [Dkt. No. 143], Plaintiff claimed that, despite expressly reserving the right to use their own names in advertising their business CornDog with No Name, Vickie and Jace Fletcher had nonetheless violated the Agreed Permanent Injunction [Dkt. No. 140] by allegedly using their names as a form of trademark. In response, the Court suggested that additional authority on that issue, specifically, would be helpful in defining the contours of Vickie and Jace Fletcher's rights with respect to their own names.

To that end, a recent (and highly publicized) decision out of the Southern District of New York confronted the precise issue currently before the Court: To what extent can an individual continue to use her own name when she has agreed not to use a trademark containing her name? *See Rauch Indus., Inc. v. Radko*, No. 1:22-CV-00909-MKV, 2022 WL 769385 (S.D.N.Y. Mar. 14, 2022). The facts of *Radko* are simple and analogous to this case: Christopher Radko had a famous brand of seasonal décor, including Christmas ornaments. *Id.* In 2020, Mr. Radko sold his brand and trademarks, including his name—Christopher Radko—to the plaintiff. *Id.* He also agreed not to use his name, in any way, to compete with Plaintiff for a period of time. *Id.*

After the noncompete period—approximately a year—passed, Mr. Radko began using his own name—Christopher Radko—even in competition with Plaintiff. *Id.* To do so, Mr. Radko started a brand called "Heartfully Yours," as well as a website, social media pages, accounts, and other advertising associated with the brand. *Id.* Throughout the branding and advertising for "Heartfully Yours," Mr. Radko used his name, repeatedly noting that the brand was "by Cristopher Radko" or "by artist/author Christopher Radko," for example:



Mr. Radko's use of his own name in this manner was, and remains, constant and persistent throughout his advertising, website, and social media accounts. *Id.* Plaintiff sought injunctive

relief to prevent Mr. Radko from using his own name, but did not succeed, because the court found that Mr. Radko's use of his own name was consistent with fair use and was not as a mark. *Id.* The plaintiff's "evidence" in *Radko* was nearly identical to the "evidence" here:



3

| *Radko* | This Case [Dkt. No. 143-4] |
|---|---|
|  | |

And should fail for the same reasons: as was the case in *Radko,* Vickie and Jace Fletcher's use of their own names is **not** as a mark.

In *Radko* the court found it to be clear that the mark was "Heartfully Yours" alone and that "Christopher Radko" was not being used as a mark in the above example. *Id.* at *8–9. The same is true here: the sole mark in this case is "CornDog with No Name," and Vickie and Jace Fletcher are simply using their names "to refer to [themselves] in a non-trademark sense." *See id.* at *9 (citing *JA Apparel Corp v. Abboud*, 568 F.3d 390, 398 (2d Cir. 2009)). Again, the court's analysis is instructive here, because the plaintiff's allegations, like their evidence, in *Radko* were almost identical to the allegations here, *i.e.*, that Mr. Radko's use of his own name to identify the origins and founders of his "Heartfully Yours" brand was tantamount to trademark usage. *Id.* The court

4

disagreed—finding that Plaintiff had no likelihood of success on it claims—for the following reasons:

- "Mr. Radko is free to promote his business using his own name…So long as Mr. Radko continues to use his name, as he has, in a manner other than as a mark, he does not infringe on Plaintiff's registered mark." *Id.* at * 10.

- "The references to Mr. Radko on the Heartfully Yours website, Facebook and Instagram pages all make clear that they are referring to the individual artist...Mr. Radko's use of his name is the only reasonable available means by which he can inform potential customers that he is the designer of the Heartfully Yours décor products." *Id.* at * 10.

- "While a surname may acquire secondary meaning and become a trademark, it will generally 'continue[] to serve the important function to its bearer of acting as a symbol of that individual's personality, reputation and accomplishments as distinguished from that of the business, corporation, or otherwise, with which he has been associated." *Id.* at *11.

As demonstrated by every example offered to the Court (especially when compared to the near identical uses set forth in *Radko*) all of these justifications apply to this case just as they did to *Radko*. Jace and Vickie Fletcher have promoted their business using their own name as a method of identifying their own "personality, reputation and accomplishments" and as "the only reasonable available means by which he can inform potential customers that" they are the owners of CornDog with No Name. *Id.* at *10-11.[1]

*Radko* is also instructive on at least one other account, as the *Radko* court emphasized, "Mr. Radko's name is accompanied by **[Mr. Radko's] own, conspicuously visible mark, and as such, is not being used as a trademark.**" *Id.* at *8 (emphasis added).  **The same is true here.** Vickie and Jace Fletcher use their own conspicuously visible mark, "CornDog with No Name" throughout their advertising, with no consistent, stylized, emphasized, or standardized placement

---

[1] In addition to the evidentiary analysis and conclusions, the *Radko* court also noted that Mr. Radko's use of disclaimers was evidence of Mr. Radko's good faith and non-trademark usage.  Plaintiff has rejected both the use of disclaimers and any proposal related to the use of disclaimers; however, Vickie and Jace Fletcher have always been willing to use disclaimers, if approved by the Court.

of their names, as owners. *See id.; see also JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 530–31 (S.D.N.Y. 2013). To that end, courts across the country have been clear that "when use of the challenged words or phrase is accompanied by a defendant's own, conspicuously visible mark, this generally does not constitute trademark use." *Id.* That is precisely the case here:

[2]

[3]

---

[2] [Dkt. No. 143-11]
[3] [Dkt. No. 143-12]

The *Radko* court is not alone in finding that even persistent and repeated use of an individual's name throughout its advertising and public presence is not trademark use—***especially*** when, as here, such use is accompanied by a defendant's actual mark.  To the contrary, rather than the exception, the standards set forth in *Radko* are the rule.  For example, in *Hensley Mfg.,* the Eastern District of Michigan found that in the following circumstances, the name "Jim Hensley" was not being used as a mark, despite repeated, persistent, (and extremely aggressive, compared to this case) commercial use:

- Print and mail advertisements, stating, "Only one man has ever designed a trailer hitch that effectively eliminates trailer sway before it begins. That man is Jim Hensley. Now he has done it again and improved the performance of his old design."

- An advertisement, stating, "The ProPride hitch was designed and patented by Jim Hensley."

- Section of the website about "The Jim Hensley Hitch Story", which explains Defendant Hensley's background.

- An eBay listing which was entitled "Used Hensley Arrow Hitch? Buy New J. Hensley Design."

- An internet domain name—www.jimhensleyhitch.com.

*See Hensley Mfg., Inc. v. ProPride, Inc.*, 622 F. Supp. 2d 554, 557–61 (E.D. Mich. 2008), *aff'd sub nom. Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009); *see also JA Apparel Corp. v. Abboud*, 682 F. Supp. 2d 294, 313 (S.D.N.Y. 2010)**;** *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1992); *Madrigal Audio Labs., Inc. v. Cello, Ltd.*, 799 F.2d 814, 823 (2d Cir. 1986).

Vickie and Jace Fletcher—like Mr. Radko, Mr. Hensley, and others before them—are building a company.  The name and trademark for that company is "CornDog with No Name."  But the company is theirs—they own it, they created it, and they alone are the forces of nature that keep it alive.  Vickie and Jace Fletcher expressly reserved the right to tell the world that "CornDog

with No Name" is their company and no one else's, just like Mr. Radko did.  That is all they have done and all they ever intended to do, and the law is clear they have the right to continue doing so.

Dated:  September 1, 2022                                  Respectfully submitted,

By: /s/ Brandon Renken
Brandon Renken
State Bar No. 24056197
Mayer Brown LLP
700 Louisiana Street, Suite 3400
Houston, Texas 77002
(713) 238-2602 (telephone)
(713) 238-4888 (facsimile)
brenken@mayerbrown.com

*Counsel for Defendants/Counter-Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing on September 1, 2022.

                                                By: /s/ Brandon Renken
                                                          Brandon Renken