**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| FLETCHER'S ORIGINAL STATE FAIR CORNY DOGS, LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 4:19-cv-00681-SDJ |
| FLETCHER-WARNER HOLDINGS LLC, VICTORIA JACE FLETCHER CHRISTENSEN, VICTORIA WARNER FLETCHER, and FLETCH TECHNOLOGY, LLC, | § § § § § § | |
| *Defendants.* | § | |

# PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO HOLD DEFENDANTS IN CONTEMPT <u>FOR VIOLATING PERMANENT INJUNCTION</u>

Steven E. Ross
Lead Attorney
Texas Bar No. 17305500
**MAXUS LEGAL PLLC**
5050 Quorum Drive, Suite 700
Dallas, Texas 75254
Phone: 972-661-9400
Facsimile: 972-661-9401
Email: sross@maxuslegal.com

Christopher M. McDowell
Texas Bar No. 24002571
**McDOWELL LAW PLLC**
1000 Texan Trail, Suite 225
Grapevine, Texas 76051
Phone: 817-678-8170
Facsimile: 469-373-2245
Email: cmcdowell@mcdowelllawfirm.net

**Attorneys for Plaintiff**

Pursuant to the Court's Order (Dkt. #167) of August 26, 2022, Plaintiff Fletcher's submits this Supplemental Brief in support of its Motion to Hold Defendants in Contempt (Dkt. #143) (the "Motion").

## 1.  The Agreed Permanent Injunction Should be Enforced as Written

The Agreed Permanent Injunction (Dkt. #140) (the "API") is clear and unambiguous, and it should be enforced as written. Consent decrees are construed according to "general principles of contract interpretation."[1] "The primary concern of a court in construing a written contract is to ascertain the true intentions of the parties *as expressed in the instrument*."[2] "[C]ourts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless."[3] Here, at most, the parties have offered differing interpretations of Paragraph 11(f)(i) of the API, but differing interpretations do not cause a contract or consent decree to be ambiguous.[4] "Rather, a contract is ambiguous only if it is subject to two or more *reasonable* interpretations after applying the pertinent canons of construction."[5]

The Defendants (also referred to as the "FWH Parties") claim that Paragraph 11(f)(i) of the API gives them the unfettered right to use "Fletcher" to Advertise[6] and promote their business,

---

[1] *Frew v. Janek*, 780 F.3d 320, 327 (5th Cir. 2015) ("Consent decrees are construed according to the 'general principles of contract interpretation.'") (quoting *Dean v. City of Shreveport*, 438 F.3d 448, 460 (5th Cir. 2006)).

[2] *Id.* at 327-28 (quoting *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006) (emphasis added)).

[3] *Id.* at 328 (emphasis in original) (quoting *Corker v. Corker*, 650 S.W.2d 391, 393 (Tex. 1983)).

[4] *McLane Foodservice, Inc. v. Table Rock Restaurants, L.L.C.*, 736 F.3d 375, 378 (5th Cir. 2013) (citing *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999)).

[5] *Id.* at 378 (emphasis added) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)).

[6] As previously noted, the term "Advertise" is defined in the API. *See* API at 5, n.1.

"Corn Dog With No Name." But that interpretation is not reasonable. If accepted by the Court, Defendant's interpretation would render meaningless other provisions of the API, particularly paragraphs 11(a) and 11(b). Paragraphs 11(a) and 11(b) impose important restrictions on Defendants by prohibiting them from using "Fletcher" as a trademark or service mark (a "Mark") in connection with their competing corn dog business. Defendants' proposed interpretation would negate those restrictions.[7]

Plaintiff Fletcher's did not intend for Paragraph 11(f)(i) to permit the FWH Parties to use their own names upon written consent; permitting a party to evade an injunction by merely giving themselves "written consent" would make a mockery of the injunction. But Plaintiff Fletcher's acknowledges that Paragraph 11(f)(i) can be read as giving Defendants Vicky Warner Fletcher and Victoria Jace Fletcher Christensen certain *limited* rights to use their names in their business, provided such use does not violate other provisions of the API.[8] This interpretation would harmonize and give meaning to all provisions of the API. The scope of those limited rights are discussed below. Further, in response to the Court's request for more granular information regarding the API, Plaintiff Fletcher's has prepared the "Practical Applications of the Injunction" document attached hereto as Exhibit A.

**2.      Defendants have Used "Fletcher" as a Trademark to Attract Attention**

While Defendants have a *limited* right to use "Fletcher" under Paragraph 11(f)(i), the issue is the scope of that right. Reading paragraph 11(f)(i) in conjunction with the other provisions of

---

[7] *BCC Merchant Solutions, Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 478 (N.D. Tex. 2015) ("An interpretation of this nature, which would render a contractual provision meaningless, is not reasonable under Texas law.").

[8] Such limited rights do not extend to Defendants Fletcher-Warner Holdings LLC and Fletch Technology LLC because they are obviously not members of the Fletcher family.

the API shows Defendants may use "Fletcher," provided the use is a descriptive use other than as a mark.

### 2.1    Descriptive Use Other Than as a Trademark: Classic Fair Use

Case law regarding the affirmative defense of classic fair use provides guidance on the nature and scope of use of "Fletcher" that would not violate other provisions of the API. The Restatement (Third) of Unfair Competition defines classic fair use as follows:

> In an action for infringement of a trademark, … it is a defense that the term used by the actor is descriptive of geographically descriptive of the actor's goods, services, or business, or is the personal name of the actor or a person connected with the actor, and the actor has used the term fairly and in good faith solely to describe the actor's goods, services, or business or to indicate a connection with the named person.[9]

To establish a classic fair use defense, the defendant must prove that her use was (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith.[10] In the three years this case has been litigated, the Defendants have never pleaded or proved a classic fair use defense.[11] Perhaps that is because the Court has found the Defendants were not acting in good faith.[12]

---

[9] Restatement (Third) of Unfair Competition § 28 (1995); *see also* 15 U.S.C. § 1115(b)(4); *Soweco, Inc. v. Shell Oil* Co., 617 F.2d 1178, 1185 (5th Cir. 1980) (The classic fair use defense "is available only when the allegedly infringing term is used not as a trademark but 'fairly and in good faith only to describe to users the goods and services of (a) party, or their geographic origin.'"). Classic fair use is to be distinguished from nominative fair use. McCarthy, Trademarks and Unfair Competition § 11:45 (5th ed.) (hereafter, "McCarthy").

[10] *Kelly-Brown v. Winfrey*, 717 F.3d 295, 305 (2d Cir. 2013); *see also* 15 U.S.C. § 1115(b)(4) (requiring the use to be "otherwise than as a mark" and "descriptive of and used fairly and in good faith only to describe" the defendant's good or services).

[11] "Fair use is an affirmative defense that is usually waived if not affirmatively pled under Federal Rule of Civil Procedure 8(c)." *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 271 (5th Cir. 1999).

[12] *Fletcher's Original State Fair Corny Dogs, LLV v. Fletcher-Warner Holdings LLC*, 434 F. Supp. 3d 473, 494 (E.D. Tex. 2020) ("Here the adoption of the Fletch marks was not innocent, and Defendants' subsequent actions bear out an improper intent to pass off their own products as though they are Fletcher's products."). Defendants' improper intent continues with their use of "Fletcher," a mark that is more confusingly similar to the Fletcher's Marks than "Fletch" was.

Case law regarding classic fair use has addressed the issue of whether a defendant has used a term as a trademark. Specifically, in analyzing whether a defendant is using a term as a trademark, courts "ask whether the defendant is using the 'term as a *symbol to attract public attention.*'"[13] In evaluating that issue, courts "must conduct a close examination of the content and context of the use."[14] Evidentiary factors considered include lettering, type style, type size, visual placement, and prominence of the challenged term.[15] A term that is set off from other text (*i.e.*, prominently placed) and appears in a different type style and larger type size is more likely to be an attention-getting symbol than a term that is contained within a descriptive paragraph that is of the same type style and type size at the other text. Repeated use of a term across various forms of media is another factor that tends to show use as a mark.[16]

The *JA Apparel Corp. v. Abboud* case is instructive.[17] Joseph Abboud was a world-famous fashion designer holding trademark rights in "Joseph Abboud," and "Joseph Abboud & Design," among other marks. After entering into a purchase agreement to sell his trademark rights to another company, JA Apparel, Mr. Abboud launched a new collection of high-end men's clothing for sale

---

[13] *Kelly-Brown*, 717 F.3d at 306 (emphasis added); *see also Marquest Group, In. v. BIC Corp.*, 862 F.3d 927, 936 (9th Cir. 2017) ("'To determine whether a term is being used as a mark, we look for indications that the term is being used to associate it with a manufacturer,' and 'whether the term is used as a symbol to attract public attention.'"); *Sorensen v. WD-40 Co.*, 792 F.3d 712, 724 (7th Cir. 2015) (finding that a term was not used as a mark because it was not an "attention-getting symbol"); *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 954 (7th Cir. 1992) (finding that a term was used as a mark because it was an "attention-getting symbol"); *Bulbs 4 East Side, Inc. v. Ricks*, 199 F. Supp. 3d 1151, (S.D. Tex. 2016) ("Often, an infringing trademark usage of the challenged term is evidenced by its employment as an 'attention-getting symbol.'") (quoting McCarthy at § 11:46.).

[14] *Kelly-Brown*, 717 F.3d at 306.

[15] McCarthy at § 11:46.

[16] *Kelly-Brown*, 717 F.3d at 309-10 ("Repetition is important because it forges an association in the minds of consumers between a marketing device and a product.").

[17] *JA Apparel Corp. v. Abboud*, 568 F.3d 390 (2d Cir. 2009).

under the "jaz" label. Mr. Abboud claimed that he was "allowed to use his name on marketing and advertising materials for Jaz."[18] The district court found that Mr. Abboud's proposed use of his name in connection with the "jaz" would constitute trademark infringement and that Mr. Abboud had not met his burden of proving fair use.[19]

On appeal, the Second Circuit evaluated Mr. Abboud's fair use defense and noted that case law "equated 'use … as a mark' with 'the use of [a] term as a symbol to attract public attention.'"[20]The appellate court vacated and remanded, finding the purchase agreement ambiguous and that the district court erred by not sufficiently focusing on Mr. Abboud's proposed uses in deciding they were trademark uses.[21]

On remand, the district court concluded that Mr. Abboud had sold his trademark rights (including the "Joseph Abboud" mark) to JA Apparel but had not sold "the exclusive right to use his personal name commercially" and proceeded to analyze Mr. Abboud's fair use defense.[22] The court held that one of Mr. Abboud's proposed ads (identified as Exhibits 187 and 188) constituted fair use and that another (identified as Exhibit 42) did not.[23] Regarding Exhibits 187 and 188, the proposed ad found to be fair use, the court observed:

> The words "Joseph Abboud" in these two exhibits appear in the context of the complete sentence, "JAZ IS A NEW LUXURY COLLECTION CREATED BY THE AWARD-WINNING DESIGNER JOSEPH ABBOUD." This sentence is in a significantly smaller font than "jaz," roughly 3/16 of an inch high, and placed in the lower left-hand corner of the ad. The ad also includes the words "FALL 2008" in the upper left-hand corner, and "NEW YORK" and "MONTREAL," each followed by a telephone number, in the lower right-hand corner. All of these words

---

[18] *Id*. at 394.

[19] *Id*. at 395.

[20] *Id*. at 399.

[21] *Id*. at 402-03.

[22] *JA Apparel Corp. v. Abboud*, 682 F. Supp. 2d 294, 308 (S.D.N.Y 2010).

[23] *Id.* at 313-16.

are in the same font, color, and size as the tag line that includes Abboud's name. As a result, Abboud's name is no more the focal point of the ads than the company's telephone number. Nor is it positioned in such a way as to attract significant public attention.[24]

In contrast, the court held that the ad identified as Exhibit 42 did not constitute fair use because:

> [T]he size and font of "Joseph Abboud" – virtually identical to the Joseph Abboud trademark – remove it from the realm of descriptive, non-trademark use. And by doing so, Abboud creates utterly confusing ads that cannot withstand scrutiny under the fair use test, even if a disclaimer were included. Although the "jaz" trademark is also displayed in each of these ads, consumers might be led to believe that "jaz" is simply a sub-line of clothing created by the rightful owner of the "Joseph Abboud" trademark – JA Apparel. This is particularly so given the prominence of the name "Joseph Abboud" in each of these ads.[25]

The court summed up its analysis by stating that "Abboud may alert consumer that he is the designer behind the new "jaz" line, but he cannot do so in an "overly intrusive manner …; nor can he do so in a way that is utterly confusing."[26]

## 2.2   Defendants have Used "Fletcher" as a Mark to Attract Public Attention

Defendants use of "Fletcher" has not been limited to descriptive uses other than as a trademark. Rather, the evidence shows they have made repeated use of "Fletcher" across various media as a symbol to attract public attention to their business. As merely a few examples, Defendants have prominently used "Fletcher" in the header of their Instagram page to attract attention.[27] They regularly use "Fletcher" in other social media posts.[28] They prominently

---

[24] *Id*. at 313.

[25] *Id*. at 315.

[26] *Id*.

[27] Motion (Non-confidential version, Dkt. #145) at Exhibit B4 (Instagram header stating "by Vic & Jace Fletcher").

[28] *Id.* at Exhibit B7 (Facebook post stating "Fry deeply, Vic & Jace Fletcher"). The repeated use of "Fry deeply, Vic & Jace Fletcher" in social media, their website, on their catering vans, and

displayed it on signage at the front of their business.[29] They prominently display "Fletcher" on their catering van.[30] They also use "Fletcher" on the front of their stand at events, as shown below:[31]



Exhibit B attached hereto collects examples of the different types of the Defendants' violations.

Thus, Defendants have not used "Fletcher" only in a descriptive sense other than as a Mark. They are instead using "Fletcher" as a Mark to attract public attention to their business, thereby

---

menus shows Defendants are using the phrase as a Mark and not merely in a descriptive sense. This applies as well to their use of "by Vic & Jace Fletcher."

[29] *Id.* at Exhibit B9 (signage stating "a concept foodery by Vic & Jace Fletcher")

[30] *Id*. at Exhibit B10 (van stating "Fry deeply, Vic & Jace Fletcher").

[31] *Id*. at Exhibit B11; *see also* PX-34 from Plaintiff's Exhibits submitted at the August 26, 2022 hearing.

unfairly capitalizing on Plaintiff Fletcher's reputation and valuable goodwill in violation of at least Paragraph 11(a) of the API. They should be held in contempt for their violations.

### 3.        Defendants have Violated the Safe Distance Rule

The safe distance rule also restricts the Defendants' conduct under the API. The rule is designed to prevent a proven infringer from evading contempt charges by making only insignificant changes to the infringing mark and continuing her conduct.[32] The Fifth Circuit has explained the rule as follows:

> In a case such as this, where [parties] have been found guilty of infringing the trademark rights of others, they should thereafter be required to keep a safe distance from the dividing line between violation of, and compliance with, the injunction. They must do more than see how close they can come with safety to that which they are enjoined from doing.[33]

Furthermore, "[i]n fashioning relief against a party who has transgressed the governing legal standards, a court of equity is free to proscribe activities that, standing alone, would have been unassailable."[34]

Here, Defendants were enjoined from using "Fletch" and "Eat Fletch," so they adopted a new position that Paragraph 11(f)(i) gives them the unfettered right to use "Fletcher" as they choose, including as a Mark. This is exactly the kind of evasive conduct the safe distance rule was

---

[32] McCarthy at § 30:21.

[33] *Eskay Drugs, Inc. v. Smith, Kline & French Laboratories*, 188 F.2d 430, 432 (5th Cir. 1951) (affirming finding of contempt).

[34] *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1126 (5th Cir. 1991) (quoting *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,* 549 F.2d 368, 390 (5th Cir. 1977), *aff'd sub nom., Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992)); *see also Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695, 705 (5th Cir. 1981) (defendant required to distance itself from plaintiff's trade dress, even if requirement involves a competitive handicap not suffered by others).

designed to prohibit. Defendants should be held in contempt to bring their three year campaign of infringement to an end.

**4.      Advertising that Links the Defendants to the State Fair of Texas is Prohibited**

While isolated references to the State Fair of Texas (the "State Fair") might not create confusion, Defendants have made repeated references to the State Fair, and have combined those references with prominent use of "Fletcher" and hashtags that are intended to grab the public's attention and lead them to believe there is a connection between Defendants and Plaintiff Fletcher, which is famous for selling corn dogs at that State Fair for eight decades. Multiple examples of such confusing use were attached as Exhibit B17 to Plaintiff's Motion.[35] Here is one example:[36]



---

[35] Motion (Non-confidential version, Dkt. #145) at Exhibit B17

[36] *Id*. at 6.

Given the strength of Plaintiff's Fletcher's admittedly famous Mark, any Advertising that uses "Fletcher" (even if descriptive) in combination with hashtags such as #statefair, #statefairoftexas, #familybusiness, and #legacy to Advertise corn dogs will inevitably cause confusion as to the source of Defendants' products and confusion as to whether Defendants' products are sponsored by or otherwise connected with Plaintiff Fletcher's. But that is no doubt exactly what Defendants have intended.

**5.   Use of "Fletcher" and "Fletch" in Defendants' Company Names is Prohibited**

Defendants claim that the name "Fletcher-Warner Holdings LLC" is never seen by the public. That claim is belied by the evidence. The Fort Worth Main Street Arts Festival advertised that "Fletcher-Warner Holdings LLC" was one of their vendors in 2022.[37] The organizers of the festival clearly saw the name "Fletcher-Warner Holdings LLC," and that is what they advertised to their customers. The Levy concessions company and the City of Dallas were confused based on Defendants' use of "Fletcher" in their company name.[38] These parties were confused based on contracts and other instruments they had seen that list "Fletcher-Warner Holdings LLC." The Defendants' continued use of "Fletcher" and "Fletch" in their company names is a blatant violation of the API,[39] and they should be ordered to change the names of those companies or, in the case of Fletch Technology, formally shut it down.

---

[37] Motion (Non-confidential version, Dkt. #145) at Exhibit B12.

[38] *See* PX-30 and PX-33 from Plaintiff's Exhibits submitted at the August 26, 2022 hearing.

[39] *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 508 (5th Cir. 1980) (company name of Texon found to infringe the Exxon trademark).

Dated:  September 1, 2022.                    Respectfully submitted,


                                              /s/ *Steven E. Ross*
                                              Steven E. Ross
                                              Lead Attorney
                                              Texas Bar No. 17305500
                                              **MAXUS LEGAL PLLC**
                                              5050 Quorum Drive, Suite 700
                                              Dallas, Texas 75254
                                              Phone: 972-661-9400
                                              Facsimile: 972-661-9401
                                              Email: sross@rossipg.com

                                              Christopher M. McDowell
                                              Texas Bar No. 24002571
                                              **McDOWELL LAW PLLC**
                                              1000 Texan Trail, Suite 225
                                              Grapevine, Texas 76051
                                              Phone: 817-678-8170
                                              Facsimile: 469-373-2245
                                              Email: cmcdowell@mcdowelllawfirm.net

                                              **ATTORNEYS FOR PLAINTIFF
                                              FLETCHER'S ORIGINAL STATE FAIR
                                              CORNY DOGS, LLC**



                            <u>**CERTIFICATE OF SERVICE**</u>

        The undersigned hereby certifies that the foregoing document is being served on counsel
of record for Defendants via the Court's Electronic Case Filing ("ECF") system on this 1st day of
September, 2022:


                                              /s/ *Steven E. Ross*
                                              Steven E. Ross